# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDITH RATLIFF,

          Plaintiff,

     v.

ANDREW SAUL,
Commissioner of Social Security,

          Defendant.

_____/

Case No. 1:19-cv-01166-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

On August 26, 2019, Plaintiff Edith Ratliff ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

## II.  BACKGROUND

Plaintiff was born on February 20, 1957, obtained a General Educational Development (GED) certificate, and previously worked as a security guard/parking lot supervisor and a house painter. (Administrative Record ("AR") 21, 22, 33, 35, 63, 70, 79, 86, 188, 193, 199, 207.) Plaintiff protectively filed claims for DIB and SSI payments on February 24, 2016, alleging she became disabled on December 15, 2013, due to high blood pressure, arthritis and bone spurs on her neck and back, and anxiety. (AR 13, 31, 65, 71, 80, 87, 95, 104, 188, 192, 199, 207, 258.) Additional impairments alleged include hyperlipidemia, hypertension, osteoarthritis of the knee, and depression. (AR 16.)

### A.   Relevant Medical Evidence[2]

#### 1.   Oakdale Community Health

Plaintiff presented to Beatrice Godbouldt, P.A., on February 20, 2015, to establish care. (AR 263.) She reported hypertension, joint pain and swelling, and pain in her knee, back, and hand. (AR 263–64.) P.A. Godbout's physical examination of Plaintiff was normal. (AR 263–64, 266.)

On March 2, 2015, Plaintiff complained of "continued back and neck pain" and that she was "[u]nable to do usual activities due to pain and fatigue." (AR 269.) She denied joint swelling. (AR 269.) On examination, P.A. Godbouldt found tenderness in Plaintiff's neck without spasms and noted her fingers were tender to touch without evidence of heat, swelling, visible deformity, or nodes. (AR 268.) Diagnostic imaging of Plaintiff's cervical and lumbar spine was ordered. (AR 268.) Plaintiff was also prescribed the pain medication Etodolac. (AR 270.)

Plaintiff presented to P.A. Godbouldt for a follow up appointment on March 13, 2015. (AR 273.) She continued to complain of back and neck pain, but reported that the "pain pills relieve her pain well." (AR 273.) Plaintiff had tenderness in her neck and back, but a painless straight leg raising test, steady gait, and normal deep tendon reflexes. (AR 272–73.) She was

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issue.

referred to physical therapy for neck pain. (AR 261, 272.)

Plaintiff requested an MRI on June 5, 2015, complaining of 9/10 pain in her lower and upper back. (AR 280.) She also requested muscle relaxers, claiming that she has tension in her lower back after physical therapy for her neck. (AR 279.) P.A. Godbouldt examined Plaintiff's neck, which was normal, and noted Plaintiff's spine was straight, atraumatic, with painless straight leg raising test. (AR 278.) Tenderness to palpation in Plaintiff's back was noted, with normal reflexes and steady gait. (AR 278.) Plaintiff was prescribed muscle relaxant Flexeril. (AR 278.)

On September 18, 2015, Plaintiff presented for a medication refill. (AR 283.) P.A. Godbouldt noted Plaintiff had "[n]o complaints other than regular aches and pains." (AR 282.) Her physical examination was normal, with no tenderness, normal strength, painless straight leg raising test, and full range of motion. (AR 281–82.)

Plaintiff presented for a follow up appointment on October 23, 2016, complaining of back pain, joint pain, limited range of motion, muscle aches, and stiffness. (AR 312.) Examination of Plaintiff's neck by Sheila Hernandez-Lee, N.P., was normal (AR 312, 313.) N.P. Hernandez-Lee found full flexion, rotation, and lateral bending in Plaintiff's back, but limited extension due to pain. (AR 313.) Tenderness in Plaintiff's knees was also noted, but with full range of motion. (AR 313.) N.P. Hernandez-Lee ordered diagnostic testing of Plaintiff's knees, cervical spine, and lumbar spine, and increased her dosage of Flexeril. (AR 313.)

On May 22, 2017, Plaintiff requested medication refills. (AR 307–310.) Her physical examination was normal, including normal gait, full range of motion and no tenderness in her neck. (AR 309.) Plaintiff presented for MRI results on July 14, 2017, which showed arthritis and spondylolisthesis in her lumbar spine. (AR 304.) She reported taking Etodolac and Flexeril, and was "open" to physical therapy but "doubt[ed] it would help her." (AR 304.) N.P. Hernandez-Lee found tenderness and decreased range of motion in Plaintiff's neck and back, but normal gait, stability, and strength. (AR 305.) On August 15, 2017, Plaintiff's physical exam was normal. (AR 300.)

///

### 2. Joseph Serra, M.D.

On February 23, 2018, consultative examining physician Dr. Serra conducted a comprehensive orthopedic evaluation of Plaintiff. (AR 323–26.) Plaintiff complained of pain in her back, neck, and knees. (AR 323.) She reported that has had pain for several years in her lower back and, despite physical therapy, the pain has increased with limited range of motion. (AR 323.) Plaintiff also stated she has had knee pain for years and received chiropractic treatment for it. (AR 323.)

Dr. Serra observed that Plaintiff had "a halting-type pain[,] shifting her weight both from right and left due to pain in both knees with weight bearing." (AR 324.) Plaintiff did not use an assistive device. (AR 324.) She had tenderness in her cervical spine with decreased range of motion. (AR 324–25.) Dr. Serra also noted Plaintiff's complaints of pain in her lumbar spine with tenderness to palpation and decreased range of motion. (AR 325.) Examination of Plaintiff's knees showed minimal swelling and crepitus, and Dr. Serra observed Plaintiff's complaints of pain were primarily with weight bearing and kneeling. (AR 325.)

Plaintiff's straight leg raising test was positive at 90 degrees bilaterally with pain referred to the lower back. In supine posture, the test was positive at 45 degrees on the right with pain in the lumbar area with radiation into the buttocks and thighs to the knees. In the supine posture on the left, the test was positive at 60 degrees with pain in the lower back and minimal radiation into the left hip. (AR 325.) Dr. Serra found Plaintiff's muscle strength, sensation, and reflexes were all normal. (AR 326.) He diagnosed Plaintiff with degenerative disk disease of her lumbosacral spine and cervical spine, and osteoarthritis in both knees. (AR 326.)

Dr. Serra concluded in his report that Plaintiff was limited to standing or walking up to four hours in an eight-hour day; sitting up to six hours per day; lifting and carrying 10 pounds frequently; occasionally climbing stairs, steps, ladders, and scaffolds; occasional kneeling; frequent balancing, stooping, and crouching; never crawling; never driving; and no exposure unprotected heights or machinery. (AR 326.)

Dr. Serra also completed a "Medical Source Statement of Ability to do Work-Related Activities" form the day after his examination of Plaintiff, on February 24, 2018. (AR 327–32.)

4

He indicated that Plaintiff could frequently lift and carry up to 10 pounds, (AR 327), and found that Plaintiff could sit for seven hours, stand for three hours, and walk for two hours in an eight-hour workday (AR 328).  Dr. Serra indicated on the form that Plaintiff could occasionally climb stairs, ramps, ladders, and scaffolds, could frequently balance and stoop, could occasionally kneel and crouch, and never crawl. (AR 330.)  According to Dr. Serra, Plaintiff could occasionally be exposed to unprotective heights, moving mechanical parts, and extreme cold, and could frequently be exposed to humidity, wetness, dust, odor, fumes, extreme heat, and vibrations. (AR 331.)  She could also frequently operate a motor vehicle. (AR 331.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 3, 2016, and again on reconsideration on September 21, 2016.  (AR 95–100, 104–109.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 110–26.)

On November 8, 2017, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 32–50.)  Plaintiff testified that she has pain and limited range of motion in her neck and pain in her lower back that is partially relieved when she is lying down. (AR 38–40.)  She also testified that her doctors recommended physical therapy but that she stopped attending after a few sessions because it caused too much pain and "hinder[ed] [her]." (AR 47–48.)  According to Plaintiff, she had not been referred for pain management or prescribed injections for her pain. (AR 48.)

A Vocational Expert ("VE") also appeared at the hearing. (AR 50–57.)  She testified that Plaintiff had past relevant work as a combination security guard and parking lot supervisor, Dictionary of Operational Titles ("DOT") codes 372.667-034 and 915.133-010, respectively, which were medium exertional work with  specific vocational preparations (SVP)[3] of 3 and 4, respectively.  (AR 53.)  The VE also testified that Plaintiff had past relevant work as a painter, DOT code 840.381-010, medium exertional work, and SVP 7. (AR 53.)  The ALJ asked the VE

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

a hypothetical question, in which the VE was to consider a person of Plaintiff's age, education, and work experience, who can lift, carry, push, or pull 25 pounds frequently and 50 pounds occasionally; who can sit for 6 hours; stand and walk for 6 hours; and who can frequently stoop, kneel, crouch, and crawl. (AR 54.) The VE testified that such a person could perform Plaintiff's past relevant work, both per the DOT and as performed. (AR 54.) The VE further testified that such a person could perform other medium positions under the DOT in the national economy, such as food service hospital worker, DOT code 319.677-014and SVP 2; hand packager, DOT code 920.587-018 and SVP 2; and dining room attendant, DOT Code 311.677-018 and SVP 2. (AR 54–55.)

The ALJ asked a follow up question regarding a second hypothetical worker with same limitations as in the first hypothetical, except that the worker could occasionally stoop, kneel, crouch, or crawl; cannot climb ladders, ropes, or scaffolds; cannot be exposed to unprotected heights; and who must alternate positions for up to five minutes every hour, but is able to remain on task during that time. (AR 55.) The VE testified that such a person could not perform Plaintiff's past work, but could still perform the hand packager job, as well as machine packer, DOT code 920.685-078, medium, SVP 2. (AR 55.) The ALJ then posed to the VE a third hypothetical person who had the same limitations as the first except the individual could only occasionally stoop, kneel, crouch, and crawl. (AR 56.) The VE testified that such a person could perform Plaintiff's past work of combination security guard and parking lot supervisor, as well as the other positions identified in response to the first hypothetical. (AR 56.)

The ALJ posed a fourth and final hypothetical to the VE of a person with the same limitations as the second hypothetical except that except the individual could lift, carry, push, or pull 10 pounds frequently and 20 pounds occasionally. (AR 56.) The VE testified that such a person could not perform Plaintiff's past work, but could perform other, light positions under the DOT in the national economy, such as mail router, DOT code 222.587-038 and SVP 2; ticket seller, DOT code 211.467-030 and SVP 2; and cashier, DOT Code 211.462-010 and SVP 2. (AR 56–57.)

///

## C. The ALJ's Decision

In a decision dated August 29, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–23.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 16–23.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 15, 2013 (step one). (AR 16.) At step two, the ALJ found Plaintiff's following impairments to be severe: lumbar and cervical degenerative disc disease. (AR 16–18.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the RFC assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 404.1567(c) and [§] 416.967(c) except she is limited to sitting for up to six hours per day, standing or walking for up to six hours per day, occasional stooping, kneeling, crouching, or crawling, no climbing ladders, ropes, or scaffolds, no exposure to unprotected heights, and she must alternate between sitting and standing for up to five minutes every hour, while remaining on task.

(AR 18–21.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 19.) The ALJ found that Plaintiff was unable to perform her past relevant work (step four), but that, based on the RFC assessment, she retained the capacity perform other work that existed in

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

sufficient numbers in the national economy, specifically, as a hand packager or a machine packager (step five).  (AR 21–22.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 3, 2019.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in assessing the opinion of examining physician Dr. Serra. (*See* Doc. 14.) The Commissioner counters that the ALJ properly evaluated the medical opinion evidence. (*See* Doc. 15.) The Court agrees with the Commissioner.

### A. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001)[5], except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

///

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

**B.     Analysis**

Following an examination in February 2018, consultative orthopedist Dr. Serra opined that Plaintiff was limited to standing or walking up to four hours in an eight-hour day; sitting up to six hours per day; lifting and carrying 10 pounds frequently; occasionally climbing stairs, steps, ladders, and scaffolds; occasional kneeling; frequent balancing, stooping, and crouching; As the only opinion evidence in the record,[6] Dr. Serra's opinion is uncontradicted, and thus the ALJ was required to set forth "clear and convincing reasons" for rejecting the opinion. *Lester*, 81 F.3d at 830.

In reviewing the medical evidence and giving "little weight" to Dr. Serra's opinion, the ALJ stated that the opined limitations were (1) "based on [Plaintiff's] subjective complaints of pain," and (2) "not consistent with the sparse evidence of treatment in the record." (AR 21.) Addressing the ALJ's second reason first, an examining physician's opinion that is not supported by the medical record as a whole may be properly discounted. *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting an ALJ may reject any medical opinion that is unsupported by the record as a whole or objective medical findings); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that an ALJ may reject an examining physician's opinion "for lack of objective support"); *Morgan v. Comm'r of the SSA, 169 F.3d 595, 603 (*9th Cir. 1999) (an ALJ may reject an examining physician's opinion as unreasonable given "other evidence in the record"); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide clear and convincing reasons for ALJ to reject treating physician's opinion).

Here, the ALJ rejected Dr. Serra's assessment of Plaintiff because she properly found it was not supported by the medical evidence, particularly Plaintiff's "sparse evidence of treatment" and evidence of "mild symptoms and clinical signs." (AR 21.) The record shows that Plaintiff had normal physical examinations in February 2015 (AR 263–64, 266), September 2015 (AR

---

[6] At the initial and reconsideration level, in June and September 2016 respectively, both State agency medical consultants found Plaintiff had severe impairments of degenerative disc disease, hypertension, and dysfunction of the major joints, but determined there was insufficient evidence to evaluate the claim, and therefore did not make any assessment of her RFC. (AR 67–68, 74–75, 83–84, 90–91.)

281–282), May 2017 (AR 309), and August 2017 (AR 300), with no tenderness (AR 281–82, 309), normal strength (AR 281–82), painless straight leg raising tests (AR 281-82), normal gait (AR 300, 309), and full range of motion (AR 281–82, 309). Even where some tenderness and reduced range of motion in Plaintiff's neck and/or back were noted, those same records showed painless straight leg raising tests (AR 272–73, 278), steady gait (AR 272–73, 278, 305), normal deep tendon reflexes (272–73, 278), and normal strength (AR 305). In addition, as the ALJ observed (AR 21), the medical record shows that Plaintiff received only limited and conservative treatment, specifically anti-inflammatory and muscle relaxant medications and physical therapy (AR 261, 270, 272, 278, 304, 313), with no referral to a pain management clinic or evidence that injections or surgery were warranted to treat her conditions, *see, e.g.*, AR 277, 280, 289, 298, 303, 307, 310, 315, 319 (Plaintiff not under pain management), AR 48 (Plaintiff's testimony that she had not been referred for pain management or prescribed injections for her pain.).[7] *See Tommasetti*, 533 F.3d at 1040 (inconsistency with the evidence of record, lack of treatment, conservative treatment, and refusal to follow proscribed treatment are clear and convincing reasons for discrediting the opinion of a treating physician).

In view of the above, the Court finds that the ALJ identified ample medical evidence that undermines Dr. Serra's opinion that indicates that Plaintiff is not capable of medium work.[8] This is a clear and convincing reason for discounting Dr. Serra's opinion. *See Tommasetti*, 533 F.3d at 1040; *Batson,* 359 F.3d at 1195; *Johnson*, 60 F.3d at 1432. As the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner, it will not disturb the ALJ's finding on this basis, even if, as Plaintiff points out (*see* Doc. 14 at 16), some of the above-

---

[7] Plaintiff reported in March 2015 that the medications controlled her pain "well." (AR 273.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to medication

[8] In addition to being inconsistent with the medical evidence, the Court observes that there is inconsistency between the opinion set forth in Dr. Serra's report and the medical source statement he completed. (*Compare* AR 326 (finding Plaintiff could stand or walk up to four hours in an eight-hour day, sit up to six hours per day, frequently crouch, never drive, not be exposed to unprotected heights or machinery, with no limitations to extremes of temperature or working around chemicals ) *with* AR 327–31 (finding Plaintiff could sit for seven hours, stand for three hours, walk for two hours; occasionally crouch; occasionally be exposed to extreme cold, unprotective heights, and moving mechanical parts; and frequently operate a motor vehicle and be exposed to extreme heat.) *See Morgan.,* 169 F.3d at 601–03 (9th Cir. 1999) (the ALJ may reject a medical opinion that is internally inconsistent).

described evidence could be construed more favorably to her. *See Thomas*, 278 F.3d at 954 (Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

Turning now to the ALJ's first reason for rejecting Dr. Serra's opinion, the ALJ's conclusion that an opinion is largely based on a claimant's discredited subjective reports is another clear and convincing reason to reject it. *Tommasetti*, 533 F.3d at 1041; *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602. Dr. Serra's report recited Plaintiff's subjective complaints of pain "for several years" in her lumbar region and knees, and then incorporated those complaints in his report (*see* AR 326 (sanding and walking capacity due to "chronic knee and low back pain")) and in the medical source statement he completed (*see* AR 327 (citing "low back pain" as one of the two "medical or clinical findings . . . which support[s] [his] assessment.").) Dr. Serra also noted Plaintiff's statements that her back pain has prevented her from working, and that sitting and standing caused her discomfort. (AR 323.) The ALJ found such statements inconsistent with the medical record, including the treatment records described above and her activities of daily living, which Plaintiff does not challenge.[9] (AR 19–21.)

Plaintiff asserts, based on *Ryan v. Commissioner*, 528 F.3d at 1199–1200, that the ALJ erred in rejecting Dr. Serra's opinion by questioning Plaintiff's credibility and that the ALJ "fail[ed] to cite any specific basis for his speculative contention." (Doc. 14 at 16.) In *Ryan*, the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." 528 F.3d at 1199–1200. However, the Ninth Circuit went on to state that

---

[9] The ALJ discounted Plaintiff's credibility in this case, relying in part on the objective medical evidence to find that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (AR 16–17.) Plaintiff has not adequately challenged the sufficiency of the evidence supporting the ALJ's adverse credibility finding in this case or the adequacy of the ALJ's reasons given to explain this finding. The Court therefore considers the ALJ's unchallenged credibility finding to be binding. *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

14

there was "nothing in the record to suggest" the examining physician in that case relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." *Id.* at 1200. Contrary to Plaintiff's assertion, the same is not true with respect to Dr. Serra's opinion: Plaintiff's complaints of knee and low back pain formed the basis, in part, for his opinions, both in his report and the medical source statement (*see* AR 326, 327). *See, e.g., Perez v. Colvin*, No. 1:12-cv-2082 BAM, 2014 WL 1247416, at *9 (E.D. Cal. Mar. 25, 2014) *(*distinguishing *Ryan* and upholding the ALJ's decision, observing that "the evaluation forms [the physicians] completed strongly suggests they did in fact rely heavily on Plaintiff's self-reporting, or at least they did so to a greater extent than they did on any objective clinical findings, further suggesting that their mental examinations were based entirely on Plaintiff's self-reports as the ALJ noted."). Accordingly, the Court finds that ALJ's assignment of "little weight" to Dr. Serra's opinion because it was to a large extent based on Plaintiff's discredited subjective reports is yet another clear and convincing reason and thus does not warrant a finding of error.[10] *See Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 602.

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **January 20, 2021**         /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE

---

[10] Even if the ALJ erred in finding that Dr. Serra's opinion was based on Plaintiff's subjective complaints of pain, such error is harmless in view of the ALJ's other permissible reason for discounting the opinion, *i.e.*, that it is inconsistent with and unsupported by the medical record. *See Molina*, 674 F.3d at 1115.